**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JEAN A. BURNS,**

    **Plaintiff,**

**vs.**                                       **Case No.: 8:06-cv-75-T-17MSS**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying claims for period of disability and disability insurance benefits under the Act.[1]

The Undersigned has reviewed the record, including a transcript of the proceedings before Administrative Law Judge Victor L. Cruz (the "ALJ"), the exhibits filed, the administrative record and the pleadings and memoranda submitted by the parties in this case.

---

[1] The District Court has referred this matter to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B)-(C), Fed. R. Civ. P. 72 and Local Rules 6.01(a), (b) and 6.02(a), M.D. Fla.

**I.      Background**

**A.      Procedural History**

Plaintiff protectively filed concurrent applications for a period of disability, disability insurance benefits and Supplemental Security Income payments on April 2, 2002 (T. 55-57, 234-38), alleging an onset date of November 15, 2001.  (T. 19) Plaintiff alleged disability due to back, leg, hip, and knee pain.  (T. 55, 65-69) Plaintiff's last date insured was December 31, 2003.  Thus, to prevail on the applications she had to establish disability onset on or prior to December 31, 2003.

Her applications were denied initially and upon reconsideration.  (T. 38-44) Plaintiff requested a hearing, which was held on March 9, 2004, before the ALJ.  (T. 18, 45)  In a decision dated July 15, 2004, the ALJ denied Plaintiff's claims for benefits.  (T. 18-27)  Plaintiff appealed her denial of benefits to the Appeals Council, but it denied review of the decision on November 16, 2005.  (T. 5-7)

**B.      Medical History and Findings Summary**

Plaintiff's medical history is set forth in detail in the ALJ's decision.  (T. 18-22) By way of summary, Plaintiff alleged she became disabled due to back, leg, hip, and knee pain following certain events, including pelvis and left femoral injuries sustained in 1984, cervical spine injuries sustained in 2000, injuries sustained in falls occurring in 2000 and 2002, and complications sustained from hysterectomy surgery in 2002. (T. 20-22)

At the hearing, the ALJ heard Plaintiff's testimony (T. 22-23, 262-95) and

reviewed her medical records, including medical records from St. Joseph's Hospital (T. 118-19, 120-31, 144-58); A. Del Pizzo, M.D. (T. 133-35); Robert Bateyko, M.D. (T. 184-208); the Sarasota County Health Department (T. 209-25); and J.S. Harmon, Psy. D (T. 167-69).

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 15, 2001. While he concluded that her combination of impairments was severe, the ALJ ultimately found that Plaintiff did not have an impairment or combination of impairments listed in or equivalent to the listed impairments found in Appendix 1, Subpart P, Regulations No. 4. (T. 26) The ALJ determined that Plaintiff's testimony regarding her pain and other symptoms was not fully credible or consistent with the competent medical evidence. Id. The ALJ also found that Plaintiff retained the residual functional capacity (the "RFC") to perform a limited range of light work activity. (T. 27) Relying on testimony from a vocational expert ("VE"), the ALJ found that although Plaintiff is unable to perform any of her past relevant work, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy. (T. 26, 27) Consequently, the ALJ concluded that Plaintiff had failed to establish that she was under a "disability" as defined in the Act. (T. 27)

Plaintiff contends that the decision of the ALJ must be reversed and remanded with an immediate award of benefits and asserts six points of error: (1) the decision is not supported by substantial evidence; (2) the ALJ relied upon fabricated testimony;

(3) the ALJ failed to address the combined effect of all of Plaintiff's impairments; (4) the ALJ failed to apply the Eleventh Circuit pain standard; (5) the ALJ ignored the VE's testimony that Plaintiff cannot sustain any work; and, (6) the ALJ erred by relying exclusively upon the medical and vocational guidelines in concluding that Plaintiff was not disabled.

On consideration of the parties' respective filings, the Undersigned finds that neither assertion has merit and **REPORTS** and **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**. Each of Plaintiff's assertions is addressed below:

## II.     Standard of Review

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) (2006). "Substantial evidence is 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) (citing Richardson v. Perales, 402 U.S. 389 (1971)). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew, make credibility determinations, or substitute its judgment as to the weight of the evidence for that of the Commissioner. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the

Commissioner or the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, the case must be reversed. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991); accord Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1986) ("Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."); Stephen v. Comm'r of Soc. Sec., 386 F. Supp. 2d 1257, 1261 (M.D. Fla. 2005) ("The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.").

### III.  Discussion

#### A.  WHETHER THE ALJ RELIED UPON FABRICATED TESTIMONY.

First, the Court dismisses summarily Plaintiff's assertion that the ALJ fabricated testimony in finding Plaintiff not disabled. This assertion is based on Plaintiff's gross overstatement of obvious typographical errors in the written decision. Specifically, in one sentence in the opinion, the ALJ refers to the VE as Mr. Harvey and states that the VE testified that the jobs identified were consistent with the DOT. (T. 26) At another point, the ALJ refers to Plaintiff using the masculine pronoun, he. (T. 23-24) Finally, the ALJ states at one point that Plaintiff could perform the full range of light work (T. 27), despite finding in all other points that Plaintiff could only perform a limited range of light work. (T. 23, 25, 26-27)

A cursory review of the record shows that the ALJ knew who the VE was in the case as he referred to her by name at several other points in the decision. (T. 24-25) Additionally, contrary to the assertion by Plaintiff, the ALJ did not fabricate his finding that the VE opined that the jobs identified within Plaintiff's RFC were consistent with the DOT. In identifying the jobs, the VE provided the corresponding DOT number for each of them. (T. 290-92) A review of the DOT definition confirms these jobs to be accurately defined and properly within the purview of Plaintiff's RFC as established by the ALJ. The reference to Plaintiff as "he" is a typo. Finally, the ALJ noted that Plaintiff could perform the full range of light work; however, this again is the apparent result of a "cut and paste" typographical error. The notation is inconsistent with all the other expressed and detailed findings of record. The record demonstrates that Plaintiff was limited to a limited range of light work and those limitations were accepted by the ALJ. The VE culled from the full range of light work those jobs Plaintiff could perform. For the reasons set forth more fully below, those findings are supported by the record in this case. As such, there simply is no basis to conclude that the ALJ fabricated evidence and to suggest so on the transparent face of this record is an affront to the process.

The Court further notes that Plaintiff made several other misstatements concerning the content of this record and the ALJ's decision. Plaintiff asserts that the only mention of cervical radiculopathy by the ALJ was that Dr. Bateyko noted it needed to be ruled out. Plaintiff states that the "ALJ failed to acknowledge that the nerve

6

testing confirmed that [she] suffers cervical radiculopathy or that Dr. Bateyko then described it as 'aggravated' cervical radiculopathy," and that the ALJ did not consider it to be a severe impairment. (Pl. Mem. at 16)  To the contrary, the ALJ acknowledged Plaintiffs diagnosis of posttraumatic cervical radiculopathy and Plaintiff's treatment with a cervical nerve block.  (T. 22)  Additionally, the ALJ included Plaintiff's cervical disease among the conditions he found to be severe. Id.

Plaintiff likewise suggests that "[m]emory deficits were noted by both doctors who performed consultative evaluations," and that "[s]imple psychological testing confirmed her impaired memory." (Pl. Mem. At 17)  However, neither doctor found Plaintiff to have a medically determinable mental impairment.  Dr. Harmon found malingering and possible medication seeking motives, and he found that "no psychiatric diagnosis appears warranted." (T. 169)  Further, Dr. Harmon diagnosed Plaintiff as having a GAF of 75.  Id.  According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed. 1994) (DSM-IV), a GAF of 71-80 indicates that there is no more than slight impairment in social, occupational, or school functioning. Dr. Stevens likewise concluded that Plaintiff had no medically determinable impairment in his psychiatric review technique form.  (T. 170)

7

**B.   WHETHER THE ALJ ERRED BY RELYING EXCLUSIVELY UPON THE MEDICAL AND VOCATIONAL GUIDELINES IN CONCLUDING THAT PLAINTIFF WAS NOT DISABLED.**

It is equally clear that the ALJ did not rely exclusively on the Grids in finding Plaintiff capable of working. He identified in Paragraph 6 of his findings a litany of limitations that Plaintiff faces. (T. 26) He then posed these limitations to the VE and she identified several jobs existing in significant numbers that Plaintiff could perform. (T. 25, 290-92) These jobs included "reception/information clerk" (DOT No. 237.367-018), "survey worker/telephone" (DOT No. 205.367-054), and "ticket taker" (DOT No. 344.667-010). The ALJ expressly found the VE's testimony to be credible. (T. 26) He concluded that Plaintiff "was capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore reached within the guidance of Medical-Vocational Rule 202.17."[2] (T. 26)

That finding is supported by substantial evidence. First, X-rays of Plaintiff's left knee showed no acute bony abnormality. (T. 146) Dr. Del Pizzo evaluated Plaintiff on

---

[2] There is also an apparent "cut and paste" error in the enumerated findings which suggests that the ALJ relied exclusively on the Grids and found Plaintiff capable of performing a full range of light work. (T. 27, ¶¶ 11,12) Even a cursory review of the written decision would disclose this as a scrivener's error. These errors are unfortunate and could have been avoided; however, courts have held that perfection of the administrative record in Social Security cases is not required. Barnhart v. Thomas, 540 U.S. 20, 28 (2003) (noting that perfection in processing Social Security claims annually is impossible); Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (holding that an error which does not result in evidentiary gaps, unfairness, or clear prejudice to the Plaintiff does not provide a basis for remand) (citing Smith v. Schweiker, 677 F.2d 826, 830 (11th Cir. 1982)) As such, Plaintiff's demand for reversal on this ground is also rejected.

August 6, 2002, and noted that her joints showed no signs of hypertrophy or inflammation and repetitive muscle testing of all extremities produced no fatigue. (T. 134) Further, Plaintiff was treated by Dr. Bateyko, who noted that cervical and lumbar X-rays demonstrated no signs of fracture, dislocation, or malignancy. (T. 208) An MRI of the cervical spine showed hypertrophy and forminal narrowing at C5-6 and C6-7 with no evidence of focal disc herniation or canal stenosis. (T. 207) Dr. Kambam, the state agency reviewing physician, performed an RFC assessment of Plaintiff which, contrary to Plaintiff's assertion, is consistent with the limitations adopted by the ALJ in finding that Plaintiff could perform a limited range of light work activity. (T. 159-66) Finally, a review of the objective medical evidence in this case shows that no physician who has examined or treated Plaintiff has suggested that she is disabled.

### C. WHETHER THE ALJ FAILED TO ADDRESS THE COMBINED EFFECT OF ALL OF PLAINTIFF'S IMPAIRMENTS AND WHETHER THE ALJ IGNORED THE VE'S TESTIMONY THAT PLAINTIFF CANNOT SUSTAIN ANY WORK

Similarly, Plaintiff's argument that the ALJ failed to consider the combined effect of her impairments and ignored the VE's answers to her counsel's hypothetical question is without merit.

If a claimant has alleged several impairments, the ALJ must consider the impairments in combination and determine whether their combined effect renders the claimant disabled. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir.

1985) (citation omitted)).  However, the ALJ meets this standard by specifically finding "the claimant not to suffer any impairment, or combination of impairments" sufficiently severe to prevent participation in substantial gainful activity.  Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

Further, hypothetical questions posed to a VE must comprise all of the medically proven limitations in order for the VE's testimony to constitute substantial evidence. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

Here, the ALJ expressly acknowledged his obligation to consider all symptoms, including pain, in evaluating Plaintiff's claim of disability.  (T. 22)  He also expressly stated that he had considered her enumerated medical and mental impairments (T. 22) and concluded that, though severe, they were "not 'severe' enough to meet or medically equal, either singularly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  Id.  As such, the ALJ fully satisfied his obligation to consider the combined effect of Plaintiff's impairments.

Consistent with these findings, the ALJ posed a complete hypothetical to the VE which incorporated all of the ALJ's findings.  (T. 289-90)  On consideration of the ALJ's hypothetical, the VE identified several jobs the Plaintiff could perform, the relevant corresponding DOT numbers and the extent to which the identified jobs were available in the national economy.  (T. 289-92)

Plaintiff's counsel suggested other hypothetical limitations for the VE to consider

10

as an overlay of the question posed by the ALJ. (T. 292-95) On consideration of these additional hypothetical scenarios, the VE concluded they would preclude Plaintiff from work. Id.

However, these additional hypothetical limitations which were claimed by Plaintiff were rejected by the ALJ. For example, Plaintiff's counsel hypothesized a person whose migraine suffering would render her non-functional for two to three days per month and who would have numerous non-exertional and exertional limitations. (T. 293-94) The ALJ rejected Plaintiff's complaints of pain to the extent alleged. As set forth more fully below, substantial evidence supports this decision as well.

### D. WHETHER THE ALJ FAILED TO APPLY THE ELEVENTH CIRCUIT PAIN STANDARD

Contrary to Plaintiff's assertion, good cause existed for the ALJ to reject her subjective complaints of pain and disabling symptoms. The standard for evaluating subjective evidence of pain in disability cases requires the ALJ to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition and (b) either (1) objective medical evidence to confirm the severity of the alleged pain or (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Mason v. Bowen, 791 F.2d 1460, 1462 (11th Cir. 1986)(emphasis added). This standard also applies to other subjective complaints. Holt v. Sullivan, 921 F.2d 1221 (11th Cir. 1991).

Under the alternate prong of the pain standard, subjective pain testimony which

is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which Plaintiff complains is itself sufficient to sustain a finding of disability.  This prong requires the ALJ to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected.  Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986).  If the ALJ rejects a claimant's testimony regarding complaints of pain, he must articulate "explicit and adequate reasons" for doing so.  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).  Further, the articulated reasons for discrediting a claimant's testimony must be supported by substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Failure to articulate reasons for rejecting a claimant's testimony requires that the testimony be accepted as true as a matter of law.  Foote, 67 F.3d at 1562.  The same is true if the articulated reasons for discrediting the testimony are not supported by substantial evidence.  Hale, 831 F.2d at 1012.

To evaluate symptoms, such as pain, the ALJ may consider: (I) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken by the claimant to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors

concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

In reviewing the ALJ's decision, the Court must first determine as a matter of law whether the ALJ applied the correct legal standard in evaluating Plaintiff's complaints of pain and other subjective symptoms. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). If the Court finds that the ALJ applied the correct legal standard, the Court must determine whether the ALJ's finding that a claimant does not meet the Mason pain standard is supported by substantial evidence. See id. The Court may not disturb the ALJ's credibility finding if it is clearly articulated and supported by substantial evidence. See Foote, 67 F.3d at 1562.

Here, the ALJ applied the correct legal standard to evaluate Plaintiff's subjective complaints of pain. The ALJ found that Plaintiff had severe impairments including a back disorder, muscle or ligament disorder, chronic polyarthralgias, chronic venous insufficiency, osteoarthritis, and cervical and lumbar spine degenerative disc disease. (T. 22) In making his credibility determination, the ALJ reviewed the medical evidence, other records, and Plaintiff's testimony. (T. 23) Plaintiff testified that she could not do the dishes because of her inability to stand. However, in a questionnaire dated November 20, 2002, Plaintiff stated that she performed light cleaning. (T. 106) Plaintiff stated further that she served as a companion for her roommate's father, which involved driving him to and from all appointments and preparing his lunch and dinner. Id. The ALJ also noted that Dr. J.S. Harmon, a consultive psychologist, found

evidence that Plaintiff took her medications in greater amounts than prescribed and suggested that there was evidence of possible malingering and drug seeking behavior. (T. 24, 169)  Dr. Harmon opined that there was no indication that Plaintiff would not be able to seek or maintain gainful employment.  Id.  The ALJ stated that he "carefully considered the effects of [Plaintiff's] alleged pain in accordance with the criteria set forth in the regulations," and, in "[a]pplying these guidelines to the evidence herein, the undersigned finds that the [Plaintiff's] persistent allegations of pain are not entirely consistent with the evidence of record, and, therefore, are not fully credible to the extent she alleged."  (T. 23)  As such, the ALJ clearly and expressly articulated reasons for rejecting Plaintiff's testimony.  The Court finds the ALJ's reasons for discrediting Plaintiff's testimony are supported by substantial, objective medical evidence.

### IV.    Conclusion

For the reasons cited above, the Undersigned **REPORTS** and **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and the **CLERK** be directed to enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure and **CLOSE** this case.

Respectfully **RECOMMENDED** in Tampa, Florida on this 31st day of January 2007.

_____
MARY S. SCRIVEN
United States Magistrate Judge

14

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies furnished to:

Presiding District Court Judge
Counsel of Record